**SECURITIES AND EXCHANGE COMMISSION, Plaintiff**

v.

**Carl E. BINETTE and Peter E. Talbot, Defendants.**

**C.A. No. 09–30107–MAP.**

United States District Court, D. Massachusetts.

Jan. 13, 2010.

---

C. Ian Anderson, Panahi D. Drew, U.S. Securities and Exchange Commission, Miami, FL, for Plaintiff.

Peter M. Bizinkauskas, Office of Attorney Peter M. Bizinkauskas, Duxbury, MA, Defendants.

*MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANTS' MOTIONS TO DISMISS*

(Dkt. Nos. 5, 10 & 13)

PONSOR, District Judge.

## I. *INTRODUCTION*

The Securities and Exchange Commission ("SEC") has brought this action asserting that Defendants Peter E. Talbot ("Talbot") and his nephew Carl E. Binette ("Binette") engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. The complaint alleges that Talbot unlawfully misappropriated material, non-public information from his employer Hartford Investment Management Company ("HIMCO")—a subsidiary of The Hartford Financial Service Group, Inc. ("the Hartford")—and transferred that information to Binette, who used it to make investments.

Talbot and Binette have each moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). (Dkt. Nos. 5 & 10.) The motions were referred to Magistrate Judge Kenneth P. Neiman for a Report and Recommendation. On December 3, 2009, Judge Neiman issued his Report and Recommendation to the effect that Defendants' motions should be denied. On December 18, 2009, Talbot filed an objection to the Report and Recommendation. Binette, proceeding *pro se*, has made no objection.

Upon *de novo* review, and after consideration of Talbot's objection, the court will adopt the Report and Recommendation in its entirety and deny Defendants' motions to dismiss the complaint.

## II. *BACKGROUND*

The facts of the case are set forth in detail in the Report and Recommendation at pages 2–4. The essential facts are not in dispute. While working as an Assistant Vice President in HIMCO's Asset Backed Securities group, Talbot attended a quasi-public management meeting where he learned that the Hartford was aggressively looking to acquire other insurance companies. He then accessed certain merger-related files on HIMCO's internal server that referenced an insurance company named Safeco Corp. ("Safeco"). This information, coupled with observations of frequent, confidential meetings among high level HIMCO employees, led Talbot to conclude that the Hartford was actively

attempting to acquire Safeco. Talbot thereafter shared this conclusion with Binette and directed him to buy Safeco call options.

## III. *DISCUSSION*

■ The gravamen of Talbot's objection is that the Magistrate Judge failed to adequately consider the "materiality" prong in recommending that the motions to dismiss be denied. Talbot argues that the complaint fails to plead sufficient facts to establish that the non-public information he learned at HIMCO was, in fact, "material." Materiality for the purpose of § 10(b) is determined under the "reasonable investor" standard: information is material "if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest]." *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). Viewing the complaint in the appropriate light,[1] the court finds it plausible that a reasonable investor would consider the information Talbot is alleged to have misappropriated important in deciding whether to buy Safeco stock. Moreover, it is apparent from Talbot's subsequent actions that he believed the information to be sufficiently material. *See SEC v. Tex. Gulf Sulphur Co.,* 401 F.2d 833, 851 (2d Cir.1968) ("a major factor in determining whether [non-public information is material] is the importance attached ... by those who knew about it."). Thus, the court finds that the SEC adequately alleged that this information was material under Section 10(b) and Rule 10b–5.

**1.** When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plain-

## IV. *CONCLUSION*

For the foregoing reasons, upon *de novo* review, the Report and Recommendation of Magistrate Judge Kenneth P. Neiman dated December 3, 2009 (Dkt. No. 13) is hereby ADOPTED. Defendants' Motions to Dismiss (Dkt. Nos. 5 & 10) are hereby DENIED. The clerk will refer this case to Magistrate Judge Neiman for a status conference to establish a final schedule for trial.

It is So Ordered.

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS (Document Nos. 5 and 10)

NEIMAN, United States Magistrate Judge.

Defendants Peter Talbot ("Talbot") and his nephew Carl Binette ("Binette") each seek dismissal under Fed.R.Civ.P. 12(b)(6) of the complaint brought against them by the Securities and Exchange Commission ("SEC"). In the complaint, the SEC alleges "insider trading," *i.e.,* that Talbot and Binette (together "Defendants") unlawfully misappropriated material non-public information from Talbot's employer in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 ("Rule 10b–5")

Defendants' motions to dismiss have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that both motions be denied.

tiff's favor. *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir.2008), cert. denied *sub nom. Pietrangelo v. Gates,* —— U.S. ——, 129 S.Ct. 2763, 174 L.Ed.2d 284 (2009).

## I. BACKGROUND

The following facts come directly from the complaint and are stated in a light most favorable to the SEC. *See Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992). For present purposes, the facts are assumed to be true.

At all relevant times, Talbot worked for a subsidiary of The Hartford Financial Service Group, Inc. ("The Hartford")— Hartford Investment Management Company ("HIMCO")—as an Assistant Vice President in HIMCO's Asset Backed Securities group. (Compl. ¶ 7.) As part of his employment, Talbot executed numerous documents in which he agreed that (1) information gained through his employment would be considered confidential, (2) he was aware of and understood HIMCO's insider trading policy, and (3) the use of any material, nonpublic information to trade securities was strictly prohibited. (*Id.* ¶ 25.)

Between November of 2007 and April of 2008, an insurance company, Safeco Corp. ("Safeco"), began communicating with numerous other companies, including Liberty Mutual and The Hartford, regarding its possible acquisition. (*Id.* ¶¶ 15, 16.) As a result, The Hartford began to gather information and conduct its own analyses regarding the risks and benefits of such a purchase. (*Id.* ¶ 16.)

Sometime in 2007, Talbot attended a meeting with management from The Hartford, during which he became aware that The Hartford was in the process of aggressively seeking to acquire other insurance companies. (*Id.* ¶ 18; Talbot Answer ¶ 18.) Later, in April of 2008, Talbot accessed a shared computer drive and a file folder belonging to Glenn Gazdik ("Gaz-

dik"), a HIMCO Vice President. (*Id.* ¶ 19.) While accessing this folder, Talbot sorted the files, which included internally created analyses and evaluations of Safeco, and opened a file named "10–K," which happened to be Safeco's most recent 10–K filing.[2] (*Id.*)

Eventually, Talbot noticed that Gazdik was working extra hours and frequently communicating with HIMCO's Head of Insurance Asset Management, William Meaney, as well as Rosario Distefano ("Distefano"), a Risk Manager. (*Id.* ¶ 20.) Talbot knew that it was unusual for these individuals to be working together or at such a hurried pace. (*Id.*) When Talbot asked Distefano what she was working on, she declined to answer. (*Id.*) Upon considering all of this information, Talbot concluded that The Hartford was actively attempting to acquire Safeco. (*Id.* ¶ 21.)

Thereafter, Talbot shared his conclusion with Binette and told him to buy Safeco call options due to the likelihood of its acquisition. (*Id.* ¶ 22.) To accomplish this, Talbot instructed Binette to open an account with a registered broker-dealer, Think or Swim Inc., and falsely fill out portions of the application, *e.g.,* Binette was to overstate his experience in trading options to ensure that his application would be accepted. (*Id.* ¶ 23.) Talbot also told Binette that, while he had his own brokerage account, he wanted to use Binette's to avoid a number of HIMCO's trading policies which would have required pre-clearance and approval of all securities transactions as well as reporting of all securities holdings. (*Id.* ¶¶ 24, 26.) In addition, Talbot stated that he believed that he would be prohibited from buying

---

**2.** A "10–K filing" (or "10–K form") is an annual report created by a publicly traded company and filed with the SEC in accord with sections 13 and 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m, 78o (d) (2000). Such a filing is designed for public reference and use in investment decisions.

Safeco securities because (1) he was an employee of HIMCO, which was acquiring other insurance companies, and (2) Safeco might be on a watch-list of companies he was not allowed to trade in light of the possible acquisition by The Hartford. (*Id.* ¶ 24.) In exchange for the tip to Binette and his help trading the options, Talbot was to receive twenty-five percent of the profits. (*Id.* ¶ 28.)

After setting up the account, Binette gave Talbot the username and password so that he could place numerous orders to buy call options for Safeco, a company which neither defendant had previously traded. (*Id.* ¶¶ 27, 34.) Through these trades, Defendants bought over $37,000 worth of call options and stock over a six-day period; this constituted between ten and eighty-seven percent of the particular day's total option volume for Safeco calls. (*Id.* ¶¶ 30–33.) On April 23, 2008, it was publicly announced that Safeco was being acquired by Liberty Mutual for $68.50 per share. (*Id.* ¶ 35.) That very day, Defendants sold their options, resulting in a profit of $615,833.06. (*Id.*)

On July 15, 2009, the SEC filed the instant complaint against Defendants alleging insider trading in violation of Section 10(b) and Rule 10b–5. The complaint seeks three things: (1) permanent injunctions to prevent Defendants from further violations; (2) an order to hold Defendants jointly and severally liable for disgorgement, with prejudgment interest; and (3) an order directing Defendants to pay a civil money penalty. In response, Talbot simultaneously filed an answer and a motion to dismiss under Rule 12(b)(6). For his part, Binette, who appears *pro se*, filed his answer on August 8, 2009, followed by a similar Rule 12(b)(6) motion on August 17, 2009.

## II.  STANDARD OF REVIEW[3]

■ When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor. *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2763, 174 L.Ed.2d 284 (2009). While a complaint does not need "detailed factual allegations," a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Recently, the Supreme Court made clear that, under *Twombly,* only a complaint that states a plausible claim for relief, on its face, survives a motion to dismiss. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). As the Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.  DISCUSSION

The court separately addresses two motions to dismiss. As will become clear, the court believes that the complaint against both Defendants is sufficiently pled and,

---

**3.** While Rule 12(b)(6) requires that such a motion to dismiss be filed prior to a responsive pleading, if the defendant files such a motion either after a responsive pleading or at the same time, the courts usually treat it as a motion for judgment on the pleadings under Rule 12(c). *MacDonald v. Grace Church Seattle,* 457 F.3d 1079, 1081 (9th Cir.2006). Because the same standards apply to motions under both Rule 12(c) and Rule 12(b)(6), *see Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir.2008); *Gray v. Evercore Restructuring L.L.C.,* 544 F.3d 320, 324 (1st Cir.2008), the court considers Defendants' motions here under the Rule 12(b)(6) review standards.

hence, will recommend that each motion be denied.

## A. *Talbot's Motion*

In the court's opinion, the complaint vis a vis Talbot has sufficient factual detail to create a plausible claim for relief against him. *See generally Iqbal,* 129 S.Ct. at 1949. In sum, the SEC has adequately alleged that Talbot is liable under Section 10(b) and Rule 10b–5 pursuant to the "misappropriation theory" of insider trading.

■ The "misappropriation theory" creates liability when a defendant "misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information." *United States v. O'Hagan,* 521 U.S. 642, 650–52, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). According to the Supreme Court, this theory is designed to provide protection against corporate "outsiders" who may access confidential information which would have an effect on the corporation's securities prices if revealed. *Id.* at 653, 117 S.Ct. 2199. A defendant may be liable under the misappropriation theory when he pieces together incomplete fragments of confidential information provided through his employment to identify likely acquisition targets and then trades stock in those target companies. *See SEC v. Materia,* 745 F.2d 197, 199 (2d Cir.1984) (citing cases). *See also Chiarella v. United States,* 445 U.S. 222, 224, 235–37, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) (while defendant possessed confidential information he collected and assembled through his job, the jury was not sufficiently instructed on the misappropriation theory to convict on such grounds).

■ Here, as indicated, the SEC alleges that Talbot was aware that any information he gained through his employment was confidential and that he used such information to determine that The Hart-

ford was seeking to acquire Safeco. (Compl. ¶ 21.) The complaint alleges as well that, while Talbot considered information from a relatively-open company meeting, Talbot also acted as a result of *non-public* information, such as irregular employee interactions, the unlabeled 10–K filing on HIMCO's computer network, and the existence of independent analyses and evaluations of Safeco. (*Id.* ¶¶ 18–21.) The complaint also alleges that Talbot shared this information with Binette, enabling Binette to engage in a number of securities trades. (*Id.* ¶¶ 22–24.) This plan, the complaint concludes, allowed Talbot to receive twenty-five percent of Binette's profits while side-stepping the various policies and regulations imposed by The Hartford. (*Id.* ¶¶ 22–24, 28.) Accepting these allegations as true, and resolving all inferences in favor of the SEC, the complaint, in this court's estimation, more than sufficiently alleges a plausible claim against Talbot.

It should also be noted that Talbot makes no mention of the proper pleading standard or why the SEC's complaint purportedly fails to meet it. Instead, Talbot merely attempts to contradict the complaint's facts with his own inferences. Because that strategy is insufficient—and at odds with the misappropriation theory alleged—the court has no choice but to recommend that Talbot's motion to dismiss be denied.

## B. *Binette's Motion*

Like Talbot, Binette ignores the pleading requirements and simply disputes the underlying facts. This is reason enough to deny Binette's motion as well. *See Cook,* 528 F.3d at 48. The SEC, however, makes another compelling argument as to why its complaint against Binette should survive.

■ As the SEC notes, both the Supreme Court and the First Circuit have

long acknowledged that liability for insider trading is not only possible for corporate insiders under the misappropriation theory, but also for "tippees" who receive or misappropriate such information from an insider. *See, e.g., Dirks v. SEC,* 463 U.S. 646, 660, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *SEC v. Sargent,* 229 F.3d 68, 75–77 (1st Cir.2000). To impose such "tippee" liability, it must be shown that "the insider has breached his fiduciary duty ... by disclosing the information to the tippee and the tippee knows or should know that there has been a breach." *Dirks,* 463 U.S. at 660, 103 S.Ct. 3255. *See also SEC v. Rocklage,* 470 F.3d 1, 5 (1st Cir.2006) (denying motions to dismiss and noting that "[t]he misappropriation theory ... creates liability when a tipper or trader misappropriates confidential information from his source of the information" and that the "downstream tippees[']" liability depended on their knowledge of the misappropriation's breach of duty); *Sargent,* 229 F.3d at 71–74 (reversing directed verdict in favor of defendants and finding that Section 10(b) liability exists when tippees use material, non-public information which they knowingly receive from co-defendant who misappropriated the information from his business partner).

■ Here, the complaint easily and plausibly alleges tippee liability by Binette. For example, the complaint alleges that Talbot informed Binette about Safeco's likely acquisition. (Compl. ¶ 22.) The complaint also asserts that Talbot instructed Binette to open an account with Think or Swim Inc., a registered broker-dealer, and falsely fill out certain portions of the

application, overstating Binette's experience in trading options, to ensure that his application would be accepted. (*Id.* ¶ 23.) Similarly, the complaint contends that Talbot told Binette that, even though he had his own brokerage account, he wanted to use Binette's to avoid a number of HIMCO's trading policies which would have required pre-clearance and approval of all securities transactions as well as reporting of all securities holdings. (*Id.* ¶¶ 24, 26.) Finally, the complaint avers that Talbot stated to Binette that he believed that he would be prohibited from buying Safeco securities (1) because he was an employee of HIMCO, which was acquiring other insurance companies, and (2) in light of the possible acquisition by The Hartford, Safeco might be on a watch-list of companies he was not allowed to trade. (*Id.* ¶ 24.) Because these assertions, in the court's view, more than adequately allege that Binette knew or should have known that there had been a breach of Talbot's fiduciary duty, the court will recommend that Binette's motion to dismiss be denied as well.

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motions to dismiss be DENIED.[4]

---

4. The parties are advised that under the provisions of Fed.R.Civ.P. 72(b) or Fed.R.Crim.P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order

entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982);

*Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.