SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

v.

Anthony MATERIA,
Defendant-Appellant.

No. 66, Docket 84–6043.

United States Court of Appeals,
Second Circuit.

Argued Aug. 29, 1984.

Decided Oct. 1, 1984.

Martin H. Kaplan, Gusrae, Kaplan & Bruno, New York City (Mark J. Astarita, New York City, on brief), for defendant-appellant.

Daniel L. Goelzer, Jacob H. Stillman, Rosalind C. Cohen, Robert Mills, Elizabeth E. Ashcraft, S.E.C., Washington, D.C. (Paul Gonson, Washington, D.C., of counsel), for plaintiff-appellee.

Before KAUFMAN, MESKILL and PIERCE, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge.

Our era aptly has been styled, and well may be remembered as, the "age of information." Francis Bacon recognized nearly 400 years ago that "knowledge is power," but only in the last generation has it risen to the equivalent of the coin of the realm. Nowhere is this commodity more valuable or volatile than in the world of high finance, where facts worth fortunes while secret may be rendered worthless once revealed.

At a certain point, amorphous data must be translated into the written word. In the financial field, this transmogrification requires masses of information—much of it highly sensitive—to be channeled through the financial printing firms that service our great commercial centers. It was in one such firm that Anthony Materia worked. Materia stole information to which he was privy in his work, and traded on that information to his pecuniary advantage. The Securities and Exchange Commission ("SEC" or "Commission") sought—and the district court granted—an injunction against Materia, restraining him from such activities in the future and requiring him to disgorge his ill-gotten gains. In light of the broad prophylactic coverage of the antifraud provisions of the securities laws, particularly where they are sought to be enforced by the SEC, we affirm the decision below, and hold that Materia's misappropriation of material nonpublic information, and his subsequent trading on that information, violate Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. Recognizing the complexity attendant to an examination of Section 10(b) and Rule 10b–5, we find it necessary to set forth the facts in this dispute.

## I.

Anthony Materia was employed by Bowne of New York City, Inc. (Bowne), a firm specializing in the printing of financial documents, including many used by its corporate clients in connection with proposed tender offers. Because even a hint of an upcoming tender offer may send the price of the target company's stock soaring, information regarding the identity of a target is extremely sensitive and zealously guarded. It is customary, therefore, for offerors (or their law firms, which ordinarily draft such documents) to omit information that might tend to identify a target company until the last possible moment. Code names are used, blanks are left to be filled in on the eve of publication, and occasionally misinformation is even included in early drafts. In sum, a quick reading of preliminary versions of these sensitive papers would not reveal the information sought to be guarded.

Anthony Materia did not read such material quickly. In his job as a "copyholder," Materia read clients' drafts aloud to a proofreader, who in turn checked to make certain that page proofs conformed to the copy received from the client. If copyholding was Materia's vocation, the stock market appears to have been equally consuming. Notwithstanding scrupulous efforts by Bowne and its clients to keep confidential information confidential,[1] Materia was able to divine the identities of at least four tender offer targets in the period between December 1980 and September 1982.[2] Within hours of each discovery, he purchased stock, and within days—after the offer had been made public—he sold his holdings at substantial gains.

Soon after Materia completed his purchase and sale of securities in the fourth target company, the Securities and Exchange Commission filed an enforcement action, charging that he had violated and was about to violate Sections 10(b) and 14(e) of the Securities Exchange Act of 1934, 48 Stat. 881, as amended, 15 U.S.C. §§ 78j(b), 78n(e) (1982), and Rules 10b–5 and 14e–3, 17 C.F.R. §§ 240.10b–5, 240.-14e–3 (1983). The basis of its complaint was Materia's trading in securities on the basis of material nonpublic information he

---

**1.** Not wishing to rely solely on the difficulties inherent in deciphering codes and filling in blanks, Bowne had a policy explicitly forbidding its employees from trading on information they might come across in the course of their work. Written statements of this prohibition were posted conspicuously in Bowne's plant, and copies were distributed to all employees.

**2.** Although the names of the target companies were deleted from the preliminary drafts to which Materia had access, sufficient data were included to permit an avid market watcher such as Materia to deduce their identities. For example, in the case of one offering document, the target's state of incorporation, number of outstanding shares and dates and amounts of recent dividends were included in early versions.

had misappropriated from his employer and its clients.[3]

Following a fourteen-day nonjury trial, Judge Brieant delivered an opinion and order from the bench. He found that Materia had, in fact, traded on the basis of confidential data stolen from Bowne and the offerors. Moreover, he explicitly found that Materia had breached a fiduciary duty to his employer and its clients to maintain their confidences. Finally, he concluded that Materia had actual knowledge of this duty, and thus had acted with scienter. Accordingly, Judge Brieant held that Materia had violated Sections 10(b) and 14(e), and Rules 10b–5 and 14e–3. The court issued a permanent injunction, restraining him from continuing violations. In addition, Materia was ordered to disgorge his illegally obtained profits of $99,862.50. Final judgment was entered on Judge Brieant's order, and Materia timely filed this appeal.

## II.

At the outset, the nature and procedural posture of this action bear description, for they delineate the parameters of our inquiry. This suit was brought, not by an investor injured as a result of Materia's connivances, but by the Securities and Exchange Commission—the governmental body charged by law with the protection of our financial markets.

■ The sweeping mandate manifest in the securities laws would be all but meaningless were it not for the broad investigatory and enforcement powers created under the statutory scheme. Our inquiry today is directed to Section 21(d) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u(d) (1982), which empowers the Commission to seek a "temporary or permanent injunction" against "any person [who] is engaged or is about to engage in acts or practices constituting a violation"

of the securities laws. A trial judge is vested with considerable discretion in granting injunctive relief pursuant to this section. There need be only a reasonable likelihood that the activity complained of will be repeated. *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1102 (2d Cir.1972). Moreover, once the equity jurisdiction of the district court properly has been invoked, the court has power to order all equitable relief necessary under the circumstances. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 390 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). Such discretion in fashioning appropriate remedies is a necessary (if unspoken) concomitant of the legislative grant of power to enforce the laws. The Supreme Court has written:

> When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes.

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291–92, 80 S.Ct. 332, 334–35, 4 L.Ed.2d 323 (1960).

■ Mindful of this principle, we cannot read Section 21(d) as restricting the remedies the SEC may pursue solely to injunctive relief. *See SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307–08, *cert. denied*, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). On the contrary, any form of ancillary relief may be granted where necessary and proper to effectuate the purposes of the statutory scheme. *Id.* at 1308; *see J.I. Case Co. v. Borak*, 377 U.S. 426, 433–34, 84 S.Ct. 1555, 1560–61, 12 L.Ed.2d 423 (1964). Given the federal courts' broad equitable powers, such noninjunctive relief may take a variety of forms. *See* Farrand, Ancillary Remedies in SEC Civil Enforcement Actions, 89 Harv.L.Rev.

---

**3.** In its first amended complaint, the Commission also alleged that Materia conveyed information regarding at least three of the tender offer targets to his wife, who in turn purchased securities in those companies. The district

court found there had been no showing that Mrs. Materia knew or should have known that the information conveyed to her was confidential, and denied the Commission's request for relief against her.

1779 (1976). In the past, the Commission has sought and obtained the appointment of a receiver for a corporation the affairs of which were in disarray as the result of past violations, *see Manor Nursing Centers, supra,* impoundment of assets, *see International Controls Corp. v. Vesco,* 490 F.2d 1334 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), and the installation of Commission approved directors on the board of a defendant corporation, *see id.* Disgorgement of illegally obtained profits is by no means a new addition to this catalogue of permissible equitable remedies. Indeed, in *Texas Gulf Sulphur, supra,* this court affirmed a district court order requiring individual defendants to pay over the profits realized from trading on insider information. And in *Manor Nursing Centers, supra,* we upheld an order requiring disgorgement of proceeds from a stock offering found to have violated the securities laws.

■ Accordingly, the forms of relief granted by Judge Brieant—a permanent injunction against future violations, and the disgorgement of profits resulting from Materia's past activities—were appropriate once it was determined that Materia's actions were proscribed by law. It is to that ultimate question we now turn.

### III.

■ Materia does not contest the district court's finding that he misappropriated confidential information and traded on it to his advantage. His sole argument is that such activity does not contravene Section 10(b) and Rule 10b–5. In light of this court's holding in *United States v. Newman,* 664 F.2d 12 (2d Cir.1981), *aff'd after remand,* 722 F.2d 729 (2d Cir.1983) (unpublished order), *cert. denied,* —— U.S. ——, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983), we hold that such actions do, indeed, lie within the proscriptive purview of the antifraud provisions of the securities laws.

*Newman* addressed the criminal liability under Section 10(b) and Rule 10b–5 of an individual defendant charged with participating in a scheme to misappropriate confidential information regarding upcoming tender offers. Along with his co-conspirators, employees of two investment banking firms, Newman surreptitiously gathered and traded on this nonpublic data. The court held that Newman's "conduct ... could be found to constitute a criminal violation of Section 10(b) and Rule 10b–5 ...." *Newman, supra,* at 16. The facts in the instant appeal are sufficiently similar to those in *Newman* for us to affirm on the authority of that precedent alone. To delineate the contours of what may still be perceived as a novel theory of liability under the antifraud provisions, we choose, however, to elucidate the bases for our holding.

#### a.

■ Rule 10b–5, promulgated in 1942 pursuant to the Commission's rulemaking power under Section 10(b), makes it "unlawful for any person ... [t]o engage in any act ... which operates ... as a fraud or deceit upon any person, in connection with the purchase or sale of securities." 17 C.F.R. § 240.10b–5 (1984). As in *Newman,* "we need spend little time on the issue of fraud and deceit." *Newman, supra,* at 17. Materia "misappropriated—stole to put it bluntly—valuable nonpublic information entrusted to him in the utmost confidence." *United States v. Chiarella,* 445 U.S. 222, 245, 100 S.Ct. 1108, 1123, 63 L.Ed.2d 348 (1980) (Burger, C.J., dissenting). We hold that such activity falls squarely within the "fraud or deceit" language of the Rule. Legislative history to the Securities Exchange Act of 1934 makes clear that the antifraud provision was intended to be broad in scope, encompassing all "manipulative and deceptive practices which have been demonstrated to fulfill no useful function." S.Rep. No. 792, 73d Cong., 2d Sess., 6 (1934). This language negates the suggestion that the provision was aimed solely at the eradication of fraudulent trading by corporate insiders. Against this expansive construction of "fraud or deceit," Materia's theft of information was indeed as fraudulent as if he had converted corporate funds for his per-

sonal benefit. *See Newman, supra,* at 17; *cf. Texas Gulf Sulphur, supra,* at 1308; *Diamond v. Oreamuno,* 24 N.Y.2d 494, 499, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969).

In an effort to circumvent this conclusion, Materia attempts to argue that he could not have defrauded his employer, since he was unaware of the confidential nature of the information he handled in the course of his work. Judge Brieant explicitly found that Bowne's diligent efforts to communicate the need for secrecy vitiated this claim, and the record contains ample support for such a finding. We find similarly unavailing Materia's argument that Bowne was not injured as a result of his misappropriation of client information. Among a financial printer's most valuable assets is its reputation as a safe repository for client secrets. By purloining and trading on confidences entrusted to Bowne, it cannot be gainsaid that Materia undermined his employer's integrity. *See Newman, supra,* at 17. Accordingly, we are driven to the conclusion that, by his misappropriation of material nonpublic information, Materia perpetrated a fraud upon Bowne.[4]

Such a determination, however, merely begins a tripartite inquiry. We turn next to Materia's contention that the only fraud properly giving rise to an action under 10(b) and 10b–5 is one premised upon a duty to disclose.

b.

■ With the barrage of private civil actions, it is "easy to forget that Section 10(b) was written as both a regulatory and criminal piece of legislation." *Newman, supra,* at 16; *see* 15 U.S.C. §§ 78u, 78ff (1982). The private right of action under that section is a judicial, rather than a legislative creation. Nowhere in the Securities Exchange Act of 1934 can be found an express private civil remedy for the violation of its terms. Indeed, a perusal of the legislative history surrounding the promulgation of Section 10(b) fails to reveal any indication that Congress contemplated a private right of action. *See,* S.Rep. No. 792, 73d Cong., 2d Sess., 5–6 (1934); Note, Implied Liability Under the Securities Exchange Act, 61 Harv.L.Rev. 858, 861 (1948). Moreover, in adopting Rule 10b–5 in 1942, the Commission did not address, and in fact did not consider, the question of private civil remedies under the provision. *See* SEC Securities Exchange Act Release No. 3230 (1942). Only by fashioning the private right with which we are by now so familiar, were courts forced to deal with ancillary issues such as standing, *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and whether a defendant has breached a duty to a particular plaintiff, *see Moss v. Morgan Stanley, Inc., supra.* Indeed, these issues are germane only in the context of private civil litigation. In reviewing an enforcement action such as this, our concern "must be with the scope of the Rule," *Newman, supra,* at 17, rather than the precise direction in which a duty may have been owed. For this reason, Materia's attempted reliance on *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), is misplaced.

Chiarella, like Materia, was an employee of a financial printing firm. He, too, divined the identities of tender offer targets from confidential documents and traded on that information for his personal gain. Affirming his criminal conviction under Section 10(b), this court held that Chiarella had breached an affirmative duty to disclose material nonpublic information to those from whom he purchased securities. *See United States v. Chiarella,* 588 F.2d 1358, 1364–69 (2d Cir.1978). Additionally, we ruled that liability could be premised upon his having misappropriated the information from his employer and its clients. *Id.* at

---

4. It is axiomatic that

> an agent is subject to a duty to the principal not to use or communicate information confidentially given to him by the principal or acquired by him during the course of or on account of his agency .... Restatement (Second) of Agency § 359 (1958).

1368 n. 14. Although the Supreme Court explicitly reversed on the first theory, holding that the mere possession of confidential information is insufficient to create a duty to disclose that information to those on the other side of the market, *see Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), it did not similarly disavow the misappropriation theory. Rather, a majority held that the theory could not support Chiarella's conviction because it had not been submitted to the jury. *See id.* at 235–37, 100 S.Ct. at 1118–19. Accordingly, "resolution of this issue [was left] for another day." *Id.* at 238, 100 S.Ct. at 1119 (Stevens, J., concurring).

■ As Judge Pierce made clear at oral argument, in this circuit that day arrived in October 1981, with the filing of the *Newman* decision. We announced then, and reiterate now, that one who misappropriates nonpublic information in breach of a fiduciary duty and trades on that information to his own advantage violates Section 10(b) and Rule 10b–5.[5]

*Moss v. Morgan Stanley Co., supra,* relied on by Materia, does not suggest otherwise. That case, arising out of the same facts as *Newman,* was a private action brought by shareholders who unwittingly sold stock to Newman and his cohorts. This court affirmed the dismissal of the action on the same limited grounds announced by the Supreme Court in *Chiarella.* The defendants owed no duty to the plaintiffs. At the risk of repetition, we stress that such analysis bears only on the type of question raised in a private suit for damages; it is not relevant to an inquiry into whether the Rule was or was not contravened.

### c.

■ Having decided that Materia's actions were fraudulent within the meaning of the securities laws, and having found that the misappropriation of his employer's property satisfies the "upon any person"

language of 10b–5, we are left with Materia's spurious argument that his fraud was not "in connection with" the purchase or sale of securities. Indeed, such a suggestion is inimical to the letter and spirit of the expansive scheme created to combat fraud in the securities markets. The information Materia stole has no value whatsoever except "in connection with" his subsequent purchase of securities. The fraud perpetrated on his employer was part and parcel of a larger design, the sole purpose of which was to reap instant no-risk profits in the stock market. Whatever limitations have been read into the "in connection with" language in the past, *see generally Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 731–33, 95 S.Ct. at 1923–24 (in private civil action under Section 10(b), "in connection with" language limits standing to a purchaser or seller of securities), it is clear that the requirement is satisfied by the self-evident nexus presented in this case.

### IV.

For all intents and purposes, the question of Anthony Materia's liability was settled fifty years ago. Determined to combat fraud in the securities marketplace, Congress chose to enact a comprehensive yet open-ended statutory scheme, capable of ongoing adaptation and refinement. In recent years, developments in capital formation and novel means of effecting corporate combinations have spawned a new genre of confidential information. Courts are increasingly called upon to address a myriad of issues regarding the proprietorship and exploitation of such data. Nevertheless, the lodestar of our analysis must be the meaning gleaned from a thorough inquiry into legislative purpose. We do not believe the drafters of the Securities Exchange Act of 1934—envisaging as they did an open and honest market—would have

---

**5.** Materia argues that, if his activities are not found to violate Section 10(b) or Rule 10b–5, they cannot give rise to an action under Rule 14e–3. We need not address his theories regarding a limited grant of rulemaking powers, however, for we have already held that his actions contravene 10(b) and 10b–5.

countenanced the activities engaged in by Anthony Materia.

Accordingly, the decision of the district court is affirmed.