10-3576-cv
Smith v. SEC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: June 20, 2011                                    Decided: August 8, 2011)

Docket Nos. 10-3576-cv(L), 11-0684-cv(CON), 11-0916-cv(CON)
_____

LYNN A. SMITH,

*Relief-Defendant-Appellant*,

GEOFFREY R. SMITH, LAUREN T. SMITH,

*Defendant-Appellants,*

            -v-

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee*,

McGINN, SMITH & COMPANY, INCORPORATED, McGINN, SMITH ADVISORS, LLC,
McGINN, SMITH CAPITAL HOLDINGS CORPORATION, FIRST ADVISORY INCOME
NOTES, LLC, FIRST EXCELSIOR INCOME NOTES, LLC, FIRST INDEPENDENT
INCOME NOTES, LLC, THIRD ALBANY INCOME NOTES, LLC, TIMOTHY M. McGINN,
DAVID L. SMITH, NANCY McGINN, DAVID M. WOJESKI, TRUSTEE OF THE DAVID L.
AND LYNN A. SMITH IRREVOCABLE TRUST U/A 8/04/04,

*Defendants.*

_____

Before: POOLER and RAGGI, *Circuit Judges*, KOELTL, *District Judge*.[*]

Consolidated appeal from, inter alia, an order of the United States District Court for the

Northern District of New York (Homer, *M.J.*) lifting an asset freeze for the purpose of

_____

[*] Honorable John G. Koeltl of the United States District Court for the Southern District of
New York, sitting by designation.

authorizing the interlocutory sale of a vacation home owned by relief-defendant Lynn A. Smith.

The magistrate judge held in relevant part that the sale was necessary to preserve the value of the

asset pending resolution of the merits of the action. We conclude that there was no error in this

finding and hold that it was not an abuse of discretion to lift the asset freeze in order to authorize

the sale. Accordingly, we affirm.

**AFFIRMED**.

_____

CHRISTOPHER PAIK, Special Counsel, United States Securities and Exchange Commission (Mark D. Cahn, General Counsel, Ann K. Small, Deputy General Counsel, Jacob H. Stillman, Solicitor, *on the brief*), Washington, DC, Kevin Patrick McGrath, Senior Trial Counsel, United States Securities and Exchange Commission, New York, NY, *for Plaintiff-Appellee*.

JAMES D. FEATHERSTONHAUGH, Scott J. Ely, Stephen B. Hanse, Featherstonhaugh, Wiley & Clyne, LLP, Albany, NY, *for Relief-Defendant-Appellant*.

STEPHEN B. HANSE, Featherstonhaugh, Wiley & Clyne, LLP, Albany, NY, *for Defendant-Appellants*.

POOLER, *Circuit Judge*:

Consolidated appeal from, inter alia, an order of the United States District Court for the

Northern District of New York (Homer, *M.J.*)[1] lifting an asset freeze for the purpose of

authorizing the interlocutory sale of a vacation home owned by relief-defendant Lynn A. Smith.

The magistrate judge held in relevant part that the sale was necessary to preserve the value of the

asset pending resolution of the merits of the action. We conclude that there was no error in this

finding and hold that it was not an abuse of discretion to lift the asset freeze in order to authorize

_____

[1] The parties consented to have these matters heard before the magistrate judge pursuant to 28 U.S.C. § 636(c).

the sale.  Accordingly, we affirm.  In this opinion, we address only the order of the magistrate judge lifting the asset freeze for the purpose of authorizing the liquidation of the Florida vacation home.  We affirm the magistrate judge's orders as to the balance of claims on this appeal in a companion summary order also issued by this Court today.

## BACKGROUND

In April 2010, the Securities and Exchange Commission ("SEC") commenced a civil securities enforcement action based on allegations of fraud and wrongdoing by Lynn Smith's husband, David Smith, and his business partner, Timothy McGinn.  The two men operated an Albany-based financial services company, McGinn, Smith & Co., Inc., and a number of related entities, through which they are alleged to have defrauded investors of more than $80 million in violation of, inter alia, Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  Specifically, the complaint states that Timothy McGinn and David Smith deceived investors in four funds by telling them that their money would be "invested" when instead it was "funneled" into various McGinn-Smith companies where it was used to make unauthorized investments, to support McGinn and Smith's "lifestyles," and to cover the payroll at McGinn, Smith & Co.

Simultaneous with the filing of the initial complaint in this action, the SEC sought a preliminary injunction (1) appointing a receiver to take possession of the defendants' assets; (2) directing defendants to provide verified accountings; (3) freezing the defendants' assets, including those held in the name of Lynn Smith; and (4) prohibiting the destruction, alteration or concealment of documents.  *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH (N.D.N.Y. Apr. 20, 2010) (Docket No. 4).  Magistrate Judge Homer held a three-day hearing on

the SEC's motion in June 2010. Because David Smith had already consented to the preliminary injunction by the date of the hearing, the central issue for the hearing was the extent to which assets held by Lynn Smith, as a relief-defendant, could be subjected to a freeze.

At that hearing, Lynn Smith testified that the assets held solely in her name consisted primarily of a stock account inherited from her father, a vacation home in New York, a vacation home in Florida, which had initially been owned jointly by David and Lynn Smith, and a checking account Lynn Smith had opened in her own name in 2009. *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *280-83, 326, 355-59, 372-75, 403-04 (N.D.N.Y. July 13, 2010) (Docket Nos. 87-89). The magistrate judge rejected Lynn Smith's testimony, instead concluding that even though the stock account was technically in Lynn Smith's name, the Smiths were "joint owners" of the account because David Smith had "unfettered control" over the account for thirty-five years, deposited money into it, and used it to loan money to McGinn Smith companies to cover operating expenses. In reaching this conclusion, the magistrate judge declined to credit Lynn Smith's testimony, noting that it was "self-serving . . . improbabl[e] . . . [lacked] credible corroborating evidence . . . [and was] inconsisten[t] . . . [and] incredible." *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *9 n.13 (N.D.N.Y. July 7, 2010) (Docket No. 86).

With respect to the checking account and the Florida house, for two principal reasons, the magistrate judge concluded that both assets were jointly owned by David and Lynn Smith. First, Lynn Smith opened the checking account and transferred the house into her sole name only *after* the commencement of Financial Industry Regulatory Authority ("FINRA") proceedings investigating David Smith. Second, both assets were used jointly, and in particular, the house

4

was "treated no differently" after it was transferred into Lynn Smith's sole name. *Id.* at *34-37. The magistrate judge directed Lynn Smith to "hold and retain within [her] control, and otherwise prevent, any . . . encumbrance . . . dissipation . . . or other disposal of any assets . . . including money, real or personal property." *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *4-5 (N.D.N.Y. July 22, 2010) (Docket No. 96). The New York vacation home was exempted from the freeze, because the magistrate judge found that it was never controlled by David Smith. At that time, the magistrate judge also declined to freeze the assets of a trust created in the early 1990s for the benefit of David and Lynn Smith's two children, concluding that the "Trust's benefits did not flow to David Smith and he did not exercise control over them such that he treated the corpus as his own." *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *40-41 (N.D.N.Y. July 7, 2010) (Docket No. 86).

The SEC later discovered a 2004 annuity agreement relating to the trust that required the trustee to make annual payments of approximately $500,000 to David and Lynn Smith beginning in 2015 and continuing until their deaths or until the trust was exhausted. *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *3 (N.D.N.Y. Nov. 22, 2010) (Docket No. 194). In light of this agreement, which David and Lynn Smith had failed to disclose, the SEC filed a motion to reconsider the magistrate judge's earlier order and requested that the magistrate judge re-freeze the trust. In November 2010, the magistrate judge granted the SEC's request. The magistrate judge further determined that Lynn Smith's non-disclosure of the annuity agreement "satisfie[d] the requirements for fraud, misrepresentation, and misconduct," and authorized the SEC to seek sanctions against her. *Id.* at *20 n.17, 24**.**

One month later, the magistrate judge denied a motion filed by Lynn Smith for release of

5

assets filed. Lynn Smith had sought the release of: (1) $16,431 per month for her "continued well-being," which included expenses surrounding the maintenance of the Smiths' primary residence located in New York; (2) attorneys' fees in the amount of $138,451; and (3) $13,466 per month for "necessary expenses" associated with the Florida home, including mortgage payments. The magistrate judge concluded that Lynn Smith had "failed to demonstrate the financial need required to obtain this relief." *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at \*4-5 (N.D.N.Y. Dec. 2, 2010) (Docket No. 211)**.** Specifically, the magistrate judge noted that Lynn Smith received "at least $440,000" from the July 2010 sale of her New York vacation home, which "should allow payment of all reasonable legal and living expenses . . . for the foreseeable future without the necessity of lifting the asset freeze for her in any respect." *Id.* at \*5. Lynn Smith has never provided any documentation of her expenditure of the funds received from the sale of the New York vacation home.

After the magistrate judge denied Lynn Smith's motion, the SEC moved to modify the asset freeze to permit the sale of the Florida vacation home. At that time, the mortgage was more than 100 days past due and had an amount owing of $32,178. The SEC filing indicated that in November 2010, Lynn Smith's attorney had contacted the SEC to suggest the sale of the Florida house, because the "bills were piling up." The SEC had agreed to the sale but sought to have a receiver, and not Lynn Smith, oversee it. Shortly thereafter, Lynn Smith told the SEC that she no longer supported the sale.

In support of its motion to lift the asset freeze in order to liquidate the Florida house, the SEC argued that the value of the house would "continue to decline sharply every month as mortgage costs, taxes, and other expenses continue to accrue and remain unpaid," and "the only

6

option that [would] preserve the equity in the [p]roperty for the benefit of investors" was a court-ordered sale. The SEC argued that the magistrate judge had authority to order the sale because Lynn Smith was in violation of the preliminary injunction directing her to "prevent[] any encumbrance [or] dissipation . . . of any assets . . . including . . . real or personal property." The SEC also argued that the magistrate judge had "inherent authority" under Section 21(d)(5) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(5), to order the sale of the property in order to preserve the status quo.

On February 1, 2011, the district court entered an order granting the SEC's motion to amend the asset freeze to permit the sale of the Florida house. The magistrate judge determined that the securities laws authorized the court to exercise "broad equitable discretion" to fashion the appropriate injunctions when faced with alleged violations of securities laws. *SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *4 (N.D.N.Y. Feb. 1, 2011) (Docket No. 263) (quoting *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997)). The magistrate judge found that, using this discretion, "[c]ourts have routinely granted relief from preliminary injunctions freezing assets pending the outcome of an action." *Id.* (citing *SEC v. Haligiannis*, 608 F. Supp. 2d 444, 448 (S.D.N.Y. 2009)). In Lynn Smith's case, the magistrate judge determined that because the preliminary injunction mandated that her assets be maintained without dissipation of their value, the court could act to prevent such dissipation if it appeared that the value of an asset was at risk. *Id.* at *4-5 (citing, inter alia, *SEC v. Unifund SAL*, 910 F.2d 1028, 1041-42 (2d Cir. 1990); *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000) (The purpose of an asset freeze is "to preserve the status quo by preventing dissipation and diversion of assets."); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987)). Moreover, the

7

magistrate judge determined that he also had the power to enter the proposed order under Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), which provides in relevant part that "the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." *Id.* at \*5 (citing *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws")). The magistrate judge further found that even though a final adjudication of liability had not been rendered, due process was not offended because the Smiths had the opportunity to appear before the court regarding the SEC's preliminary injunction motion to challenge the SEC's evidence. *Id.* at \*5-6. Finally, the magistrate judge declined to lift the asset freeze to allow Lynn Smith to maintain the property after finding that she had not demonstrated any "changed circumstances" since the denial of her previous request to lift the asset freeze. *Id.* at \*7. The magistrate judge ultimately concluded that the "balance of the interests" weighed in favor of permitting the sale of the Florida house after finding: (1) the value of the property had decreased from $2.4 million in 2008 to between $1.7 and $1.9 million in 2010 and "[n]o evidence ha[d] been offered to indicate that there exists any reasonable expectation that the market for the property will improve in the foreseeable future"; and (2) it was "likely" that the property's value would continue to diminish over the course of the proceedings as mortgage payments continued to accrue, raising the possibility that the mortgage holder would seek a foreclosure sale "under less favorable circumstances." *Id.* at \*7-8. Finally, the magistrate judge directed the receiver to oversee the sale given his "nationwide experience," disinterest in the outcome, and "reasonable" fee. *Id.* at \*9.

## DISCUSSION

We review an order freezing assets, or modifying an asset freeze, for abuse of discretion. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 438 (2d Cir. 1987).

It is "well established" that Section 22(a) of the Securities Act of 1933 and Section 27 of the Securities Exchange Act of 1934 "confer general equity powers upon the district courts" that are "invoked by a showing of a securities law violation." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) (citing 15 U.S.C. §§ 77v(a), 78aa). "[O]nce the equity jurisdiction of the district court properly has been invoked, the court has power to order all equitable relief necessary under the circumstances," *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984), "including the impoundment of assets," *Am. Bd. of Trade*, 830 F.2d at 438. The purpose of such an asset freeze is to ensure "that any funds that may become due can be collected." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (describing asset freeze as "ancillary relief to facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation [of securities laws] is established at trial"); *see also SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000) ("A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets.").

Section 20(b) of the Securities Act provides: "Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of [the Securities Act] . . . the Commission may, in its discretion, bring an action in any district court . . . to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order

9

shall be granted without bond." 15 U.S.C. § 77t(b). Section 21(d) of the Securities Exchange Act employs nearly identical language. *See* 15 U.S.C. § 78u(d).

In this jurisdiction, injunctions sought by the SEC do not require a showing of irreparable harm or the unavailability of remedies at law. *Unifund SAL*, 910 F.2d at 1036. Rather, the SEC need only make "a substantial showing of likelihood of success as to both a current violation and the risk of repetition." *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998). There is an exception to this rule where the injunction freezes assets. Where an asset freeze is involved, the SEC "must show either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws." *SEC v. Byers*, No. 08 Civ. 7104, 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009) (footnote omitted); *see also SEC v. Heden*, 51 F. Supp. 2d 296, 298 (S.D.N.Y. 1999) ("Unlike a preliminary injunction enjoining a violation of the securities laws, which requires the SEC to make a substantial showing of likelihood of success as to both a current violation and the risk of repetition, an asset freeze requires a lesser showing." (citations omitted)). Where something more than an asset freeze is in question, however, the required degree of "likelihood of success" on the merits varies depending upon the nature of the relief sought:

> [E]ven when applying the traditional standard of "likelihood of success," a district court, exercising its equitable discretion, should bear in mind the nature of the preliminary relief the Commission is seeking, and should require a more substantial showing of likelihood of success, both as to violation and risk of recurrence, whenever the relief sought is more than preservation of the status quo. Like any litigant, the [SEC] should be obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous are the burdens of the injunction it seeks.

*Unifund SAL*, 910 F.2d at 1039 (emphasis added, citations omitted). Where an asset sale is

10

sought to preserve the value of the assets, the SEC should be required to make a substantial showing of the likelihood that it will be able to obtain an ultimate sale of the assets in question.

The plenary powers of a federal court to order an asset freeze are not limited to assets held solely by an alleged wrongdoer, who is sued as a defendant in an enforcement action. Rather, "[f]ederal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." *Cavanagh*, 155 F.3d at 136. In such cases, "[t]he burden rests with the Commission to show that the funds in the possession of the [relief defendant] are ill-gotten." *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 392 (D. Conn. 2009).

Lynn Smith does not challenge the court order that froze the Florida home as an asset, which was based in part upon the magistrate judge's conclusion that David Smith was a joint owner of the home. Lynn Smith challenges only the magistrate judge's order lifting the asset freeze for the purpose of liquidating that particular asset. Before authorizing the liquidation of the Florida house, the magistrate judge entered certain findings, including the following:

> In 2008, the estimated market value of the property was approximately $2.4 million with an outstanding balance due on the mortgage of approximately $900,000 leaving an equity in the property of approximately $1.5 million. With the downward turn of the country's economy and the Florida real estate market, the property's present market value has diminished to approximately $1.7-$1.9 million. With a mortgage balance due of approximately $900,000, the equity in the property has already shrunk by approximately $500,000-$700,000. No evidence has been offered to indicate that there exists any reasonable expectation that the market for the property will improve in the foreseeable future.
>
> Moreover, it is likely that the current equity in the property will continue to diminish during the pendency of this action. The

11

> monthly mortgage payments of over $6,000 are not being paid and the mortgage holder may well seek an order permitting foreclosure and a sale of the property under less favorable circumstances. Those services necessary for the upkeep of the property either have been canceled or are incurring additional debts against the property. In either instance, the equity in the property will be further reduced by the costs of repairs from deterioration and additional liens against the property for unpaid services. Incurring these additional expenses at a rate of over $13,000 per month might make sense if there existed any reasonable likelihood that the value of the property would appreciate sufficiently in the foreseeable future to compensate for the expenses. No such likelihood appears.

*SEC v. McGinn, Smith & Co.*, No. 10-cv-00457-GLS-DRH, at *7-8 (N.D.N.Y. Feb. 1, 2011) (Docket No. 263).

These findings, though not identical, are similar to findings prerequisite to an interlocutory sale of assets through a forfeiture proceeding. In a forfeiture action, property may be subjected to an interlocutory sale "[i]f [that] property . . . is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expense of keeping the property is excessive or disproportionate, or if there is unreasonable delay in securing the release of property." *United States v. Esposito*, 970 F.2d 1156, 1160 (2d Cir. 1992); *see also United States v. King*, No. 10 Cr. 122, 2010 WL 4739791, at *1 (S.D.N.Y. Nov. 12, 2010). Although the standard applicable in a forfeiture proceeding does not determine the outcome of the action before us, it is instructive. Moreover, although the equitable relief sought goes beyond mere preservation of the status quo, the SEC's showing of its likelihood of success on the merits with respect to both the underlying securities law violation and David Smith's joint ownership of the Florid house constitutes a sufficiently "persuasive showing of its entitlement to a preliminary injunction" to justify the "more onerous burdens of the injunction it seeks."

12

*Unifund SAL*, 910 F.2d at 1039.  In light of the "sweeping mandate manifest in the securities laws," *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984), and the district court's broad equitable power to fashion ancillary relief when its jurisdiction under those laws has been involved, *see Unifund SAL*, 910 F.2d at 1041, it is clear that the magistrate judge did not abuse his discretion when he ordered the interlocutory liquidation of Lynn Smith's Florida house in light of its declining value and the diminishing equity in the property.  *Accord* 15 U.S.C. § 78u(d)(5) (stating that a "[f]ederal court may grant[] any equitable relief that may be appropriate or necessary for the benefit of investors").  Accordingly, we affirm the order of the magistrate judge.

### CONCLUSION

For the reasons stated herein, we **AFFIRM** the judgment of the district court.  The magistrate judge's rulings with respect to the claims remaining in this consolidated appeal, including the appeal from a July 7, 2010 preliminary injunction continuing an asset freeze as to a stock account owned by Lynn Smith as well as the January 11, 2011 order denying Lynn Smith's motion to reconsider a November 22, 2010 order, which froze the corpus of the David L. and Lynn A. Smith Irrevocable Trust U/A 08/04/04, are affirmed in the companion summary order also issued by this Court today.

13