13-653-cv
FTC v. Strano

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand thirteen.

PRESENT:  CHESTER J. STRAUB,
              REENA RAGGI,
              PETER W. HALL,
                     *Circuit Judges*.

-----------------------------------------------------------------------

FEDERAL TRADE COMMISSION, STATE OF CONNECTICUT,

                  *Plaintiffs-Appellees*,

         v.                               No. 13-653-cv

ANGELINA STRANO,

                  *Relief Defendant-Appellant*,

LEANSPA, LLC, A CONNECTICUT LIMITED LIABILITY COMPANY, NUTRASLIM, LLC, A CONNECTICUT LIMITED LIABILITY COMPANY, NUTRASLIM U.K. LTD, AN UNITED KINGDOM LIMITED LIABILITY COMPANY, DBA LEANSPA U.K. LTD, BORIS MIZHEN, individually and as an officer of LeanSpa, LLC, NutraSlim, LLC, and NutraSlim U.K. LTD, LEADCLICK MEDIA, INC., A CALIFORNIA CORPORATION, SUCCESSOR LEADCLICK MEDIA, LLC, RICHARD CHIANG, individually and as an officer of LeadClick Media, Inc.,

                  *Defendants*.

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:     DAVID N. WYNN, Arent Fox LLP, New York, New York.

APPEARING FOR APPELLEES:     MICHAEL D. BERGMAN (David C. Shonka, Acting General Counsel, John F. Daly, Deputy General Counsel, *on the brief*), Federal Trade Commission, Washington, D.C., *for Appellee Federal Trade Commission*.

Matthew F. Fitzsimmons, Assistant Attorney General, *for* George Jepsen, Attorney General of the State of Connecticut, Hartford, Connecticut, *for Appellee State of Connecticut*.

Appeal from an order of the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the preliminary injunction dated January 29, 2013, is AFFIRMED.

Relief defendant Angelina Strano, spouse of defendant Boris Mizhen, appeals from an order freezing certain assets owned by Strano pending litigation of claims against Mizhen and affiliated entities for violating the Federal Trade Commission Act ("FTC Act"), see 15 U.S.C. § 41 et seq., and Connecticut's Unfair Trade Practices Act ("CUTPA"), see Conn. Gen. Stat. § 42-110a et seq., through allegedly misleading practices in connection with the marketing and sale of weight-loss supplements to consumers under the trade names LeanSpa and NutriSlim. After Mizhen stipulated to an order enjoining him from engaging in listed business practices and freezing all assets owned or controlled by him or held for his benefit, plaintiffs secured an order restraining certain assets nominally owned by Strano or entities

2

she owned but that plaintiffs contended fell within the existing asset freeze order as to Mizhen.[1]

We review an order freezing assets for abuse of discretion, see Smith v. SEC, 653 F.3d 121, 127 (2d Cir. 2011), which we will identify only if the outcome is premised on an error of law or clearly erroneous factfinding, or if it exceeds the bounds of permissible decisionmaking, see Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011) (reciting standard for abuse of discretion generally). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm for substantially the reasons articulated in the district court's persuasive written decision.

1.    Subject Matter Jurisdiction

Strano contends that the district court erred as a matter of law in concluding it had subject matter jurisdiction to enter the challenged restraining order. She submits that neither such jurisdiction nor its attendant asset-freezing power may derive from a federal court's inherent authority alone. The argument fails because the district court's asset-freezing authority here emanates from statute.

---

[1] The subject property fits into two categories: (1) brokerage accounts in the name of Fellsmere Farms LLC ("Fellsmere accounts"); and (2) undeveloped real property at 3124 Boston Post Road, in Guilford, Connecticut ("Boston Post Road property"). This property is owned directly by separate limited liability companies, each of which in turn is owned exclusively or nearly exclusively by Strano.

3

As the district court recognized, implicit in FTC Act Section 13(b)'s injunction authority is the power of "courts to grant ancillary equitable relief." FTC v. Bronson Partners, LLC, 654 F.3d 359, 365 (2d Cir. 2011) (citing 15 U.S.C. § 53(b)); see also Conn. Gen. Stat. § 42-110m(a) (authorizing equitable relief under CUTPA). We have characterized the freezing of assets as ancillary relief that facilitates monetary recovery by preserving the status quo pending litigation of statutory violations. See Smith v. SEC, 653 F.3d at 127 (discussing such relief in context of alleged securities violations); see also Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) ("The power to enforce implies the power to make effective the right of recovery afforded by the Act."). Moreover, we have held that "[t]he plenary powers of a federal court to order an asset freeze are not limited to assets held solely by an alleged wrongdoer, who is sued as a defendant in an enforcement action." Smith v. SEC, 653 F.3d at 128.[2] Rather, such powers extend to assets of duly named "nominal" or "relief" defendants like Strano here. See SEC v. Cavanagh, 155 F.3d 129, 136–37 (2d Cir. 1998) (noting that individual named as relief defendant enjoys "full opportunity to litigate her rights").

---

[2] Because the court's power to freeze Mizhen's and Strano's assets derives from the FTC Act and CUTPA, there is no merit to Strano's contention that doing so usurps a legislative function. For that reason, and also because plaintiffs seek equitable relief, Strano's reliance on Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 332–33 (1999) (disclaiming federal courts' inherent authority to enjoin transfer of defendant's assets at request of unsecured contract creditor seeking money damages), is misplaced.

SEC v. Cherif, 933 F.2d 403, 413–16 (7th Cir. 1991), relied on by Strano, is not to the contrary.  While Cherif held that the Securities Exchange Act injunction provision, see 15 U.S.C. § 78u(d), does not confer equitable power on courts to freeze the assets of a non-party "against whom no wrongdoing is alleged," SEC v. Cherif, 933 F.2d at 414, it identified a pair of mutually exclusive ways to bring a person's assets within the court's jurisdiction nonetheless: (1) assert a substantive claim against the person as a defendant; or (2) "purely as a means of facilitating collection," name the person as a "nominal," i.e., "relief," defendant, who holds the named defendant's assets only "in a subordinate or possessory capacity as to which there is no dispute," id. at 414–15 (internal quotation marks omitted) (noting agency's problematic pursuit of "each of these contradictory theories of recovery at once," along with district court's "inconclusive" findings, with respect to particular defendant); accord CFTC v. Walsh, 618 F.3d 218, 225 (2d Cir. 2010) (adopting Cherif's definition of relief defendant).

Plaintiffs pursue the latter theory.  In such circumstances, because no substantive claim is asserted against Strano, "it is unnecessary to obtain subject matter jurisdiction over h[er] once jurisdiction over the defendant is established."  SEC v. Cherif, 933 F.2d at 414. That conclusion is particularly apt because, as the district court observed, Mizhen has already stipulated to a preliminary injunction freezing assets actually owned or controlled by him or held in his behalf.  Moreover, the record in this case, unlike that in Cherif, is devoid of any suggestion that plaintiffs named Strano a relief defendant to sidestep the burden of proving she committed consumer fraud.  In short, this case avoids the gray area between substantive

5

and nominal-defendant liability present in <u>Cherif</u>, and plaintiffs, to prevail, must satisfy the standard for freezing a relief defendant's assets. Insofar as Strano asserts that the identified property is legitimately hers and that she is improperly named as a relief defendant, we address—and reject—these contentions below.

Accordingly, Strano's jurisdictional challenge is without merit.

2. <u>Asset Freeze</u>

Strano does not contest that portion of the injunction freezing her assets in the amount of disbursements to her allegedly traceable to Mizhen's fraud. <u>See generally</u> <u>Smith v. SEC</u>, 653 F.3d at 128 (reiterating that equitable freezing power in enforcement proceeding extends to non-party's ill-gotten gains). Rather, she challenges findings that the Fellsmere accounts and Boston Post Road property are, in fact, assets of Mizhen and thus restrainable pursuant to the stipulated preliminary injunction.[3] Far from clearly erroneous, these findings are amply supported by the record.

"To obtain a preliminary injunction freezing the assets of such a relief defendant, [plaintiffs] must demonstrate only that they are likely ultimately to succeed in disgorging the frozen funds." <u>CFTC v. Walsh</u>, 618 F.3d at 225; <u>see also</u> <u>Smith v. SEC</u>, 653 F.3d at 128

---

[3] We construe the stipulated injunction to allow the freezing of Strano's assets to the same degree as if we considered the issue without an injunction. Thus, we need not evaluate Strano's contention that the district court impermissibly used the injunction to broaden its residual asset-freezing authority. To the extent the district court relied on Mizhen's "indirect" control of the Fellsmere accounts, we understand that reference not to lessen the required standard of proof as to control, but rather to acknowledge the web of affiliated entities through which Mizhen is alleged to have managed his funds.

(describing lowered evidentiary burden generally where nothing "more than an asset freeze is in question"). Thus, despite Strano's argument to the contrary, plaintiffs were not required as a condition of securing the challenged asset freeze to show that Mizhen actively managed the subject property to Strano's complete exclusion. Rather, it was sufficient for plaintiffs to demonstrate that Mizhen treated the assets as his own. Cf. Citibank, N.A. v. Vebeliunas (In re Vebeliunas), 332 F.3d 85, 93 (2d Cir. 2003) (requiring that husband receive more than those "benefits that would naturally flow to the [other] spouse" to be deemed equitable owner of wife's property). Even if we were to require something approaching exclusive control, however, absent persuasive indicia of control exercised by Strano, lacking here, we could not conclude that the district court abused its discretion in finding it likely that Mizhen so dominated the subject properties held in Strano's name as to support their eventual disgorgement.

a.    Fellsmere Accounts

Relying on the affidavit of an FTC forensic accountant, the district court described in detail the creation of the Fellsmere accounts and their funding with $7 million from an entity owned and operated by Mizhen. It explained how over $3 million was then transferred from the Fellsmere accounts to Mizhen's other business concerns and how another $1.3 million was used for a tax payment and annuity from which he benefited. In concluding that Mizhen thus controlled the Fellsmere accounts, the district court rejected as insufficiently documented or lacking in credibility Strano's claims of contributing $1.6 million received in irregular, lump-sum "salary" payments from Mizhen or from other sources of income.

7

Strano does not argue that these factual findings are clearly erroneous. Rather, she faults the district court for not considering each of the Fellsmere accounts individually, arguing that doing so would have at best supported freezing only account number 4521, for which Mizhen held a power of attorney. We are not persuaded. The district court did not exceed its discretion in freezing the remaining Fellsmere accounts as likely conduits for movement of Mizhen's own funds among other entities in his control. See Deckert v. Independence Shares Corp., 311 U.S. at 290 (upholding restraint on transfer of funds in possession of trustee middleman and earmarked for defendant). Indeed, that conclusion finds support in transfers showing that account 4521 was funded with nearly $6 million from a distinct Fellsmere account, and that it was "the only significant source of funding for" yet another Fellsmere account. Van Wazen Decl. ¶ 29, J.A. 687.

Nor do we identify an abuse of discretion in the district court's rejection of Strano's claim of control over the Fellsmere accounts based on her purported personal advance of $3 million in Fellsmere funds on credit to a LeanSpa operating account. The district court reasonably concluded that the irregularity of the advances, combined with the absence of scheduled or actual repayments (not to mention any collection efforts by Strano), undermined her claim to being a bona fide creditor. See SEC v. McGinn, Smith & Co., 752 F. Supp. 2d 194, 215 (N.D.N.Y. 2010) (holding that sporadic repayment on loans lacking documented interest rates or repayment schedules belied wife's status as creditor of husband's company and, thus, supported freezing account), aff'd sub nom. Smith v. SEC, 432 F. App'x 10, 12–13 (2d Cir. 2011) (summary order).

8

There is no merit to Strano's claim that plaintiffs' prior representation that the Fellsmere accounts were not frozen—true when offered in opposition to the release of a tax refund—estops them from pursuing a freeze of those accounts now on a more fully developed evidentiary record.  See DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (listing judicial estoppel requirement that party take "clearly inconsistent" positions (internal quotation marks omitted)).

Accordingly, the district court permissibly froze the Fellsmere accounts.

b.      Boston Post Road Property

The same conclusion obtains with respect to the Boston Road property, which the district court froze on the theory that it was purchased with Mizhen's funds and transferred to Strano for no consideration shortly thereafter.  Strano maintains that the property cannot be so restrained absent evidence that Mizhen purchased it with fraudulent proceeds or exercised control over the property after its transfer.  In concluding otherwise, the district court noted the absence of any explanation by Strano for the transfer that would rebut the inference that it was undertaken to shield the property from potential creditors.  See SEC v. McGinn, Smith & Co., 752 F. Supp. 2d at 217 (freezing vacation home purchased with funds from account controlled by husband and then transferred to wife after commencement of enforcement action, where property was "treated no differently" following transfer); cf. CFTC v. Walsh, 618 F.3d at 226 ("[R]eceipt of property as a gift, without the payment of consideration, does not create a legitimate claim sufficient to immunize the property from disgorgement." (internal quotation marks omitted)).  Moreover, while Strano notes that the

9

April 2010 transfer preceded commencement of LeanSpa's operations, deposit records show that funding of LeanSpa's operating account, purportedly under a credit line from Strano, commenced in May 2010.

Further supporting the challenged restraint on property in Strano's name is Mizhen's deposition testimony that, pursuant to the couple's "estate planning," Mizhen held business assets in his name while Strano held accumulated personal property in hers. Thus, when the FTC moved for an asset freeze below, Mizhen's personal assets, exclusive of a recent tax rebate, totaled $135,000, in comparison to millions of dollars in assets held by Strano.

On this record, the district court acted within its discretion in restraining real property held in Strano's name without requiring plaintiffs to bring a fraudulent conveyance action to preserve their rights. See generally SEC v. Cavanagh, 155 F.3d at 137 (distinguishing between action that results in agency receiving proceeds and one that merely freezes property during litigation).

The preliminary injunction dated January 29, 2013, is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court