15-2658-cv
SEC v. I-Cubed Domains, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand sixteen.

PRESENT:  PIERRE N. LEVAL,
　　　　　 ROBERT D. SACK,
　　　　　 REENA RAGGI,
　　　　　　　　　*Circuit Judges*.
-----------------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,
　　　　　　　　　*Plaintiff-Appellee*,


　　　　v.　　　　　　　　　　　　　　　　No. 15-2658-cv


I-CUBED DOMAINS, LLC, SHALINI AHMED, SHALINI AHMED 2014 GRANTOR RETAINED ANNUITY TRUST, DIYA HOLDINGS, LLC, DIYA REAL HOLDINGS, LLC, I.I. 1, I.I. 2, I.I. 3,
　　　　　　　　　*Relief Defendants-Appellants*,


IFTIKAR AHMED,
　　　　　　　　　*Defendant,*


IFTIKAR ALI AHMED SOLE PROP,
　　　　　　　　　*Relief Defendant*.[1]
-----------------------------------------------------------------------

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

APPEARING FOR APPELLANTS: DAVID B. DEITCH (Jonathan A. Harris, Harris, O'Brien, St. Laurent & Chaudhry LLP, New York, New York; Paul E. Knag, Murtha Cullina, LLP, Stamford, Connecticut, *on the brief*), Harris, O'Brien, St. Laurent & Chaudhry LLP, New York, New York.

APPEARING FOR APPELLEE: STEPHEN G. YODER, Senior Litigation Counsel (Anne K. Small, General Counsel; Sanket J. Bulsara, Deputy General Counsel; John W. Avery, Deputy Solicitor, *on the brief*), Securities and Exchange Commission, Washington, D.C.

Appeal from an order of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on August 12, 2015, is AFFIRMED.

In this civil enforcement action, relief defendants I-Cubed Domains, LLC ("I-Cubed"), Shalini Ahmed ("Shalini"), Shalini Ahmed 2014 Grantor Retained Annuity Trust ("GRAT"), DIYA Holdings, LLC ("DIYA"), DIYA Real Holdings, LLC ("DIYA Real"), I.I. 1, I.I. 2, and I.I. 3 (together, "Relief Defendants") appeal from a preliminary injunction freezing their assets, as well as those of defendant Iftikar Ahmed ("Iftikar"), up to $118,246,186 to prevent dissipation of funds to which the SEC asserts it would be entitled upon judgment against Iftikar, whose alleged fraudulent conduct underlies the enforcement proceeding.[2] See SEC v. Ahmed, 123 F. Supp. 3d 301 (D. Conn. 2015).

---

[2] Shalini is the wife of Iftikar; I.I. 1, I.I. 2, and I.I. 3 are their children. Iftikar is "alleged to have engaged in a decade-long fraud that resulted in the misappropriation of tens of millions of dollars from his former employer Oak Management Corporation . . . and its investors." SEC v. Ahmed, 123 F. Supp. 3d 301, 305 (D. Conn. 2015). Iftikar

2

On appeal, Relief Defendants do not challenge the preliminary injunction as against Iftikar. Instead, they argue that the district court abused its discretion in freezing certain of their specific assets because the SEC failed to prove either (1) that Iftikar was in fact the equitable owner of such assets, rendering Relief Defendants nominees; or (2) that the assets satisfied the test set forth in SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998), which permits freezing the assets of relief defendants who have received ill-gotten gains to which they have no legitimate claim. Alternatively, Relief Defendants contend that the injunction is overbroad because the SEC carried its burden only as to a portion of the frozen assets. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

We review a preliminary injunction freezing assets—an "asset freeze"—for abuse of discretion. See CFTC v. Walsh, 618 F.3d 218, 225 (2d Cir. 2010). A district court abuses its discretion if it applies the incorrect legal standard or relies upon clearly erroneous findings of fact. See id. To obtain an asset-freeze order, the SEC must establish only that it is likely to succeed on the merits, a lesser showing than is necessary for other forms of equitable relief. See SEC v. Miller, 808 F.3d 623, 635 (2d Cir. 2015). Moreover, "[t]he plenary powers of a federal court to order an asset freeze are not limited to assets held solely by an alleged wrongdoer, who is sued as a defendant in an enforcement action." Smith v. SEC, 653 F.3d 121, 128 (2d Cir. 2011). Those powers extend as well to a person not accused of wrongdoing, a relief defendant, "where that

was purportedly arrested on unrelated charges of insider trading in April 2015, and fled the country to India the following month. See id. at 306 n.1.

3

person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds." SEC v. Cavanagh, 155 F.3d at 136. The receipt of property as a gift without payment of consideration does not create a legitimate claim under the Cavanagh test. See CFTC v. Walsh, 618 F.3d at 226.

The parties agree that the Cavanagh standard does not apply where an asset claimed to belong to a relief defendant is actually owned by a defendant, such that the relief defendant is a "nominee" for the defendant. See SEC v. Hedén, 51 F. Supp. 2d 296, 299 (S.D.N.Y. 1999); accord Smith v. SEC, 432 F. App'x 10, 13 (2d Cir. 2011). Relief Defendants, however, argue that the SEC failed to show that they were nominees for Iftikar. We need not decide that issue because the specific assets satisfy the Cavanagh test in any event. See Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016) (noting that judgment can be affirmed on any ground supported by record).

1. Asset Freeze of Particular Property

    a. Proceeds from I-Cubed Transaction

The first asset at issue is the proceeds of a sale of stock in "Company C" from Relief Defendant I-Cubed to Iftikar's former employer, Oak Management Corporation ("Oak"). Relief Defendants do not challenge the district court's determination that the SEC was likely to show that this transaction was fraudulent. Nor do they dispute that most of the proceeds ultimately went to the GRAT, for which Shalini served as grantor and trustee, with the remainder going to Shalini. Shalini concedes that she provided nothing of value in return for the transferred proceeds. The record thus satisfies the

4

Cavanagh test as to proceeds from the I-Cubed transaction and supports the asset freeze of this property.

b.      Park Avenue Apartments

Relief Defendants also challenge the asset freeze of two apartments—Unit 12A and Unit 12F at 530 Park Avenue—owned by Relief Defendants DIYA and DIYA Real, respectively.

The record supports—and Relief Defendants do not contest—the district court's findings that the funds used to purchase each apartment derived from Iftikar's alleged fraudulent dealings. The record also supports—and Relief Defendants also do not contest—findings that DIYA, DIYA Real, and Shalini did not provide any goods or services in exchange for the apartments. This was sufficient to show the Relief Defendants' likely receipt of ill-gotten assets to which they had no legitimate claim and, therefore, to support an asset freeze under Cavanagh. Shalini's involvement in the management of the properties after they were acquired is not relevant to this determination.

c.      Shalini's Goldman Sachs Salary

Shalini contends that the asset freeze inappropriately covered approximately $1.2 million in income she earned while employed at Goldman Sachs between 2004 and 2011. Shalini admits that this income was held in various joint accounts, which she shared with Iftikar. At this stage of the litigation, no evidence has been adduced by Relief Defendants that would allow the SEC to determine whether funds remaining in these accounts up to the total amount of Shalini's earned income represent her legitimately

5

obtained assets or Iftikar's ill-gotten gains. Because the purpose of an asset freeze is to ensure that any funds that may become due after judgment can be collected, Smith v. SEC, 653 F.3d at 127, the district court cannot be said to have abused its discretion in failing to carve out Shalini's income from assets in the joint accounts. In SEC v. Rosenthal, 426 F. App'x 1 (2d Cir. 2011), cited by the district court to support the freeze, a panel of this court stated that, where ill-gotten funds are commingled with a relief defendant's legitimately obtained funds, "[t]he SEC is not required to trace specific funds to their ultimate recipients" because "[i]mposing such a tracing requirement would allow an insider trading defendant to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets or . . . by commingling and transferring such profits," id. at 3; see also CFTC v. Walsh, 618 F.3d at 226 n.4 ("[W]hether frozen funds can be traced to the proceeds of the alleged fraudulent scheme is not necessarily dispositive."); SEC v. Byers, No. 08 Civ. 7104 (DC), 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009) (Chin, J.) ("[A] freeze order need not be limited only to funds that can be directly traced to defendant's illegal activity for the reason that the defendant should not benefit from the fact that he commingled his illegal profits with other assets." (internal quotation marks omitted)). Thus, the district court's actions fell within its discretion.

Relief Defendants' argument for release of Iftikar's legitimately earned salary also fails, not only because these assets are similarly commingled with fraudulently obtained funds, but also because those funds are Iftikar's and subject to an asset freeze to preserve his ability to pay any eventual judgment in any event.

6

2.      Injunction Overbreadth

Relief Defendants argue that insufficient evidence of nominee status renders the asset freeze overbroad.   The argument fails because Relief Defendants have been unable to point to any improperly frozen assets.

In response to one of the SEC's discovery requests, Shalini stated:

> [T]he asset freeze is inappropriate with respect to [1] compensation she earned over the course of her employment, [2] including grants of stock and retirement account contributions; [3] her personal contributions to the marital estate; [4] the [GRAT]; [5] the assets of DIYA Holdings, LLC; the assets of DIYA Real Holdings, LLC; [6] her and her children's reasonable legal expenses; [and] her and her children's reasonable living expenses.

Suppl. App'x 303.   For reasons already discussed, the district court acted within its discretion in freezing the first, fourth, and fifth enumerated assets.   As to the second, the SEC has consented to release $300,000 in Shalini's stock options and retirement accounts.   As to the third, Shalini has failed to identify any other particular contributions to the marital estate.   Finally, the district court has provided, on application, substantial carve-outs from the freeze for her legal and living expenses, including over $200,000 for the payment of legal fees in a separate criminal matter and $8,245 per month for her and her children's living expenses.   Accordingly, she fails to show that the preliminary injunction is overbroad in these respects.

That conclusion is only reinforced by the district court's statement during a September 2015 telephone conference indicating that it would entertain any application to release assets "identifiable as [Shalini's], and not tainted." Id. at 344.   During

7

another hearing in December 2015, the district court similarly invited Relief Defendants' counsel to request an evidentiary hearing as to which untainted assets belonged to his clients, but counsel expressly declined to do so on the understanding that legal and living expenses could be made available even if such funds needed to be taken from tainted accounts. Indeed, at the injunction hearing itself, Shalini acknowledged that many of her most valuable assets were funded by "money coming from [Iftikar's] line of work." J.A. 810. Thus, the district court reasonably concluded that Relief Defendants had failed to show that any assets should be excluded from the freeze. See SEC v. Ahmed, 123 F. Supp. 3d at 310–11. No different conclusion is warranted by Relief Defendants' assertion, in their reply brief, that the district court purportedly found them to be nominees of several frozen assets without hearing any evidence supporting that conclusion. Issues raised for the first time in a reply brief are considered waived and normally will not be addressed on appeal. See Bishop v. Wells Fargo & Co., 823 F.3d 35, 50 (2d Cir. 2016). There is no reason to depart from that rule here where Relief Defendants do not allege that the referenced assets—a Fidelity account in Shalini's name and several trust accounts—properly belong to Relief Defendants, much less that they do not include proceeds of Iftikar's fraud. Indeed, the SEC adduced evidence that at least one of the assets, Shalini's Fidelity account, was largely funded by proceeds from one of Iftikar's fraudulent transactions so as to support a freeze under Cavanagh.

Insofar as Relief Defendants are able to identify any improperly frozen assets—including those mentioned in their reply brief—they can apply to the district court to release them in the first instance. The SEC would then be required to carry its

8

burden of demonstrating that any such identified assets are either ill-gotten gains to which Relief Defendants do not have a legitimate claim or that Iftikar in fact owns the assets in question.   See Smith v. SEC, 653 F.3d at 128.   But on the present record, their overbreadth challenge is meritless.[3]

3.    Conclusion

We have considered Relief Defendants' other arguments and conclude that they are without merit.   Accordingly, we AFFIRM the district court's preliminary injunction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Insofar as Relief Defendants argue that the value of their frozen assets improperly exceeds the amount of disgorgement sought—because the SEC would necessarily be freezing their assets for purposes of satisfying Iftikar's civil penalties—this argument fails.   If Relief Defendants cannot prove that any frozen assets legitimately belong to them, then necessarily none of their assets are being improperly frozen to satisfy the civil penalties alleged to apply to Iftikar's conduct.