*SEC v. Kontilai*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## CORRECTED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of February, two thousand twenty-five.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

———————————————————————

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

> *Plaintiff-Appellee,*

> v.                                                          No. 23-7537

MYKALAI KONTILAI,

> *Defendant-Appellant,*

COLLECTOR'S COFFEE, INC., LOS ANGELES

DODGERS LLC, DOE INDIVIDUALS 1
THROUGH 50, ROE CORPORATIONS 1
THROUGH 50, JACKIE ROBINSON
FOUNDATION, INC., SDJ INVESTMENTS, LLC,
ADOBE INVESTMENTS, LLC, DARREN
SIVERTSEN, Trustee of Sivertsen Family
Trust U/A/D 10/01/2002,

*Defendants.*

_____

**For Defendant-Appellant:** GEORGE LAMBERT, The Lambert Law Firm Prof. Corp., Washington, DC (Cary J. Hansel, Ashton Zylstra, Hansel Law, PC, Baltimore, MD, *on the brief*).

**For Plaintiff-Appellee:** EMILY TRUE PARISE, Senior Appellate Counsel (Megan Barbero, General Counsel, Dominick V. Freda, Assistant General Counsel, *on the brief*), Securities and Exchange Commission, Washington, DC.

Appeal from an order of the United States District Court for the Southern District of New York (Gabriel W. Gorenstein, *Magistrate Judge*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 4, 2023 order of the district court is **AFFIRMED**.

---

[1] The parties consented to have the motions underlying the order on appeal heard by a magistrate judge pursuant to 28 U.S.C. § 636.

In this civil enforcement action brought by the Securities and Exchange Commission (the "SEC") for alleged securities fraud, defendant Mykalai Kontilai appeals from the district court's order granting the SEC's motion for a preliminary injunction and asset freeze and denying his motion to modify the freeze. On appeal, Kontilai does not dispute the district court's decision that the SEC was likely to succeed on the merits of its claims, nor does he contest that an asset freeze was warranted. Instead, he challenges only the size and scope of the freeze – up to the amount of $46,121,649.68 to prevent the dissipation of funds to which the SEC asserts it would be entitled upon judgment against Kontilai and his company, defendant Collector's Coffee, Inc. ("CCI," and together, "Defendants").[2] We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a preliminary injunction freezing assets for abuse of discretion. *See CFTC v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010); *Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011). A district court "abuses its discretion if it applies legal standards

[2] While this matter was pending on appeal, the district court presided over a jury trial on the SEC's securities fraud claims against Defendants. On December 13, 2023, the jury returned a verdict finding them liable on all claims. On March 1, 2024, the SEC moved for remedies, including disgorgement, civil penalties, and a permanent injunction enjoining Defendants from future violations of the securities laws. As of the date of this Order, that motion remains pending in the district court.

3

incorrectly or relies upon clearly erroneous findings of fact." *Walsh*, 618 F.3d at 225 (internal quotation marks omitted).

## I.    Amount Subject to the Asset Freeze

We begin with Kontilai's challenge to the district court's calculation of the total dollar figure of the assets subject to the freeze. In particular, the district court authorized a freeze of Kontilai's assets up to $46,121,649.68, reflecting: (1) the total amount of funds that CCI received from investors between 2014 and 2018 – roughly $23 million – that may be subject to disgorgement under 15 U.S.C. § 78u(d)(5) and (7), plus (2) an equal amount in possible civil monetary penalties that the SEC could seek against Kontilai and CCI pursuant to 15 U.S.C. §§ 77t(d) and 78u(d)(3).

Kontilai first contends that the district court abused its discretion by calculating the disgorgement portion of the asset freeze against him to equal $23 million, the full amount of the funds CCI raised from investors, as opposed to the roughly $7.27 million that Kontilai purportedly personally misappropriated from those investors through CCI. According to Kontilai, the district court's imposition of joint-and-several liability on CCI and Kontilai improperly

4

transformed the disgorgement remedy into a penalty, impermissibly resulting in an overbroad asset freeze.   We disagree.

The remedy of disgorgement under 15 U.S.C. § 78u(d)(5) and (7) is generally limited to "a wrongdoer's net profits," "that is, the gain made upon any business or investment, when both the receipts and payments are taken into the account." *Liu v. SEC*, 591 U.S. 71, 75, 83 (2020) (internal quotation marks omitted); *see SEC v. Ahmed*, 72 F.4th 379, 395–97 (2d Cir. 2023).   As the Supreme Court explained in *Liu*, imposing joint-and-several disgorgement "could transform any equitable profits-focused remedy into a penalty" by holding "wrongdoers [liable] for benefits that accrue to his affiliates," contrary to traditional equitable principles "requiring individual liability for wrongful profits."   *Liu*, 591 U.S. at 90.   Yet, at the same time, the *Liu* Court recognized that the "historic profits remedy" allows for "some flexibility to impose collective liability" and left it up to the lower courts to consider its application in each case "consistent with equitable principles."   *Id.* at 90–91.   Accordingly, courts before and after *Liu* have found joint-and-several liability appropriate where defendants, including individuals and corporate entities, were "partners engaged in concerted wrongdoing."   *Id.* at 90; *see, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (affirming joint-and-

several disgorgement award "where [the] firm ha[d] received gains through its unlawful conduct" and "its owner and chief executive officer ha[d] collaborated in that conduct and ha[d] profited from the violations"); *SEC v. Johnson*, 43 F.4th 382, 390–93 (4th Cir. 2022) (affirming joint-and-several disgorgement award against an entity and an individual who was the entity's founder, chief executive manager, and controlling member); *SEC v. World Tree Fin., L.L.C.*, 43 F.4th 448, 455, 467 n.15 (5th Cir. 2022) (permitting the same against an entity and an individual who was the entity's sixty-percent owner, chief executive officer, and chief investment officer).

In estimating disgorgement for purposes of the asset freeze, the district court correctly articulated these legal principles and concluded that applying joint-and-several liability was warranted because "Kontilai and the company he solely controlled" were "partners in wrongdoing." Sp. App'x at 47. While Kontilai contends that the SEC has not shown that he personally received or benefitted from the majority of the investor funds raised, he does not meaningfully contest that he was "primarily liable for the fraud that created [the net] profits, was intimately involved in the perpetration of the fraud, and was a controlling person

of the company."  *Id.* (internal quotation marks omitted).[3]  We therefore find no abuse of discretion in the district court's decision to apply joint-and-several liability in estimating the amount of Kontilai's possible future disgorgement award.

Kontilai's argument that the district court erred by failing to deduct CCI's legitimate business expenses from the disgorgement portion of the asset freeze is likewise unpersuasive.  *See Liu*, 591 U.S. at 91–92.  It bears noting that the Supreme Court in *Liu* was evaluating a final order of disgorgement, not a preliminary injunction freezing assets pending any future final judgment.  *See SEC v. Liu*, 851 F. App'x 665, 669 (9th Cir. 2021) (rejecting a challenge to the scope of an asset freeze because "tailor[ing] th[e] injunction solely to those assets that are net profits from the use of investor funds" "would require the district court to calculate an amount of disgorgement now, prior to any final judgment").  But even at the remedies stage, "[t]he amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation," and "[i]f the disgorgement amount is generally reasonable, any risk of uncertainty about the amount fall[s] on the wrongdoer whose illegal conduct created that

---

[3] Kontilai does not appear to challenge the district court's determination that $23 million is the amount that CCI could be required to disgorge as unlawful net profits.

7

uncertainty." *SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (internal quotation marks omitted); *see id.* (placing the burden on the defendant to identify legitimate business expenses that "should have been deducted from an otherwise reasonable disgorgement amount").

We therefore cannot say that the district court abused its discretion by not deducting any of CCI's purportedly legitimate business expenses from the disgorgement estimate, based on its finding that "Kontilai ha[d] not offered any competent [evidence] as to what expenses are actually legitimate." Sp. App'x at 48 n.15. The district court found that the report of Kontilai's expert was "essentially worthless" because "his method of determining that CCI expenses were for the benefit of CCI consisted of simply questioning whether such an expense could conceivably be made for the benefit of a company CCI's size, without any sort of investigation or analysis as to whether the expenses were legitimate or actually made for CCI's benefit." *Id.* at 13. Given the lack of evidence, and the principle that a defendant "will not be allowed to diminish the show of profits by putting in . . . inequitable deductions" where "the entire profit of a business or undertaking results from the wrongful activity," *Liu*, 591 U.S. at 84 (internal quotation marks omitted), the district court was not obliged to conduct

8

a full-blown accounting of legitimate business expenses at the preliminary injunction stage.

Finally, Kontilai challenges as overbroad and excessively harsh the district court's calculation of a possible civil penalty in an amount of $23 million, which reflects the amount of investor funds that CCI received during the relevant period.[4]   Where a defendant's securities violations involve fraud and result in substantial losses, the district court is entitled to impose "[t]hird tier" penalties up to "the gross amount of pecuniary gain to such defendant."   15 U.S.C. § 77t(d)(2)(C); *see SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013).   While we have explained that this statutory language prohibits district courts from imposing civil penalties on a joint-and-several basis, *SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 287–88 (2d Cir. 2013), we have also recognized that "multiple defendants can each benefit from the same dollar of gain, in which case each can be penalized for

---

[4] We note that, in explaining the scope of disgorgement in SEC enforcement actions, the Supreme Court in *Liu* reiterated that "equity never lends its aid to enforce a forfeiture or penalty."   591 U.S. at 77 (internal quotation marks omitted); *see also Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318, 333 (1999) (holding that, in an action for legal relief in the form of money damages, a district court lacks the authority under Fed. R. Civ. P. 65 to issue a preliminary injunction freezing assets because "such a remedy was historically unavailable from a court of equity").   This raises the question of whether a district court may enter a preliminary injunction freezing assets – that is, grant preliminary equitable relief pursuant to 15 U.S.C. § 78u(d)(5) – to preserve a defendant's ability to pay a non-equitable civil penalty.   We decline to address the question here, however, because Kontilai has not developed this argument on appeal.   *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the [appellate] briefs are considered [forfeited] and normally will not be addressed on appeal.").

that gain," *SEC v. Cole*, 661 F. App'x 52, 55 (2d Cir. 2016) (internal quotation marks omitted); *see also SEC v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231 (RJS), 2014 WL 2112032, at *11 (S.D.N.Y. May 6, 2014) ("[W]here multiple defendants mutually benefitted from the same gains, the best calculation of a single defendant's gain may be the total gains obtained by the group through that defendant's violations."), *aff'd*, 639 F. App'x 752 (2d Cir. 2016).

Again, the district court correctly articulated these legal principles before concluding that Kontilai's "civil penalty *may* be as much as the total intake from investors" because he "benefitted from investor funds to the same extent as CCI." Sp. App'x at 49 (emphasis added). Kontilai contends that holding him accountable for CCI's purported pecuniary gains is effectively a joint-and-several penalty. But the district court found that Kontilai had "sole[]" and "total control of the operations of CCI." *Id.* at 47, 49; *see also* Dist. Ct. Doc. No. 1185 (SEC's Proposed Findings of Fact and Conclusions of Law) at 3–4 (identifying Kontilai as CCI's founder and president, and owner of 100% of the company's voting shares). Given Kontilai's control and ownership of CCI, the district court did not err in considering that a gain for CCI *could* be, in effect, a gain for Kontilai. The district court must ultimately determine whether there is a "fair way to separate benefit

10

to [CCI] from benefit to [Kontilai]," but at this stage and based on the existing record, the district court correctly accounted for the fact that "defendants can, and often do, each benefit from the same dollar of gain." *Amerindo*, 2014 WL 2112032, at *11 n.11. And while Kontilai asserts that any penalty "would be unduly harsh under the circumstances," Kontilai Br. at 57, such an argument is premature, as the district court has not yet determined any civil penalty that it might impose upon a finding of liability, *see Razmilovic*, 738 F.3d at 31, 38 (explaining that courts have "broad equitable power to fashion appropriate remedies" and that "the actual amount of the penalty" up to the statutory maximum is "up to the discretion of the district court" (internal quotation marks omitted)).

In short, we find no abuse of discretion with the district court's determination, at the preliminary injunction stage, that Kontilai could be liable for roughly $46 million in disgorgement and civil penalties. Of course, our conclusion is limited to the propriety of this pre-judgment asset freeze, and the district court will have to calculate disgorgement and decide an appropriate penalty (if any), among other potential monetary awards, as part of a final judgment. Nothing in this Order alters the parties' respective burdens in that

11

regard, and Kontilai is free to re-raise and further substantiate any of his arguments made here at that time.

## II.    Scope of the Asset Freeze

Kontilai also contends that the preliminary injunction impermissibly (1) freezes "untainted" assets unrelated to the fraud, including "after-acquired" assets that "came into existence after the entry of the freeze," Kontilai Br. at 27, 29, and (2) fails to include carveouts for living expenses and costs related to his defense of ongoing parallel criminal proceedings.[5]   Neither of these arguments is persuasive.

*First*, we find no error in the district court's conclusion that "untainted" assets may be frozen.   Under 15 U.S.C. § 78u(d)(5), the SEC "may seek, and any [f]ederal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."   As we have previously explained, the purpose of an asset freeze "is to ensure that any funds that may become due can

---

[5] In 2020, federal prosecutors in Colorado and Nevada unsealed two indictments charging Kontilai with various offenses for conduct underlying the SEC's claims.  *See United States v. Kontilai*, 20-cr-83 (D. Colo.); *United States v. Kontilai*, 20-cr-109 (D. Nev.).   In April 2023, Kontilai was arrested in Germany, where he remained in custody at the time of the district court's preliminary injunction order.   Kontilai appeared in the Nevada case in May 2024 – represented by retained counsel – and was detained pending trial.   Kontilai thereafter entered a plea agreement to resolve both criminal cases and pleaded guilty before the district court in Nevada on November 21, 2024.   On December 4, 2024, Kontilai was sentenced to fifty-one months' imprisonment and ordered to pay $6.1 million in restitution.

be collected." *Smith*, 653 F.3d at 127 (internal quotation marks omitted); *see SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990) (describing a "freeze order" as "ancillary relief to facilitate enforcement of any disgorgement remedy that might be ordered in the event a violation [of securities laws] is established at trial"). Moreover, we have long held that, in ordering disgorgement for securities fraud after a finding of liability, "the district court is not required to 'trace' ill-gotten gains to specific assets in [the defendant's] possession." *Ahmed*, 72 F.4th at 407; *see, e.g.*, *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011). Accordingly, we have permitted freezes to extend to assets "sufficient to pay the amounts that might eventually be due," without regard to whether the assets are related to the purported fraud. *Unifund*, 910 F.2d at 1041–42; *see also SEC v. I-Cubed Domains, LLC*, 664 F. App'x 53, 56 (2d Cir. 2016) (rejecting a request for the "release of [defendant's] legitimately earned salary" because such funds were "subject to an asset freeze to preserve his ability to pay any eventual judgment").

The cases cited by Kontilai do not compel a different conclusion. Kontilai contends, for example, that *Liu* precludes asset freezes from covering untainted assets because "the freeze must be strictly limited to the 'wrongdoer's net unlawful profits.'" Kontilai Br. at 29 (quoting *Liu*, 591 U.S. at 80). But even after *Liu*, we

13

have expressly "affirmed the lack of a tracing requirement as to primary-defendant disgorgement."  *Ahmed*, 72 F.4th at 407 n.16.   Similarly, Kontilai argues that the Supreme Court's holding in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), precludes courts from using their equitable powers to "freeze assets that are untainted by the claims alleged by the SEC in this case."   Kontilai Br. at 28.   But in concluding that a court does not have authority to freeze assets to preserve them to satisfy a potential award of money damages, the Supreme Court in *Grupo Mexicano* "distinguished those cases where the ultimate relief sought is equitable."   *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (citing *Grupo Mexicano*, 527 U.S. at 324–26).   Accordingly, *Grupo Mexicano* does not prevent a pre-judgment freeze of untainted assets at least to preserve an ultimate award of equitable relief pursuant to 15 U.S.C. § 78u(d)(5) and (7).   *See id.; see also United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 498 (4th Cir. 1999).[6]   And we do not read *Luis v. United States*, 578 U.S. 5

---

[6]  In *Rahman*, the Fourth Circuit concluded that the district court "was authorized by its traditional equitable power to issue a preliminary injunction" freezing assets because the United States sought equitable relief, not only monetary damages and statutory penalties.   *See* 198 F.3d at 494–99.   In *ETS Payphones*, the Fifth Circuit upheld the asset freeze in an SEC civil enforcement action that was specifically "justified as a means of preserving funds for the equitable remedy of [disgorgement]," while at the same time acknowledging the SEC had also sought civil damages. 408 F.3d at 734.   Here, Kontilai relies on *Grupo Mexicano* to support his argument that the district court cannot freeze untainted assets, but he does not meaningfully argue that a freeze of assets

14

(2016), in which the Supreme Court held that the Sixth Amendment precludes the pretrial restraint of "innocent (*i.e.*, untainted) funds . . . needed [for a criminal defendant] to obtain counsel of choice," *id.* at 18, as creating a sweeping prohibition on the freeze of untainted assets in the SEC civil enforcement context.

*Second*, the district court did not abuse its discretion in declining to include carveouts for Kontilai's living expenses and criminal defense costs. True, "courts routinely carve out modest sums from asset freeze orders when necessary to meet the defendant's [and his family's] reasonable living expenses." *SEC v. Santillo*, No. 18-cv-5491 (JGK), 2018 WL 3392881, at *3 (S.D.N.Y. July 11, 2018). And as noted above, the Supreme Court has held that "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice" – *i.e.*, what Kontilai contends is the case here – "violates the Sixth Amendment." *Luis*, 578 U.S. at 10.

But far from failing to consider Kontilai's arguments concerning living expenses and criminal defense funds, the district court simply concluded that Kontilai had not provided any indication of, or support for, the asserted amounts needed for either exception. *See United States v. Bonventre*, 720 F.3d 126, 131 (2d

---

up to an amount that specifically accounts for an estimated civil penalty – *i.e.*, a legal remedy – is impermissible. Accordingly, as explained above, *see supra* note 4, we deem any such argument forfeited and do not address it in this appeal.

Cir. 2013) ("[A] defendant's constitutional right to use his or her own funds to retain counsel of choice . . . is not implicated unless the restraint actually affects the defendant's right to choose counsel and present a defense."). Indeed, the district court reasonably declined to "assess whether the asset freeze should be modified to allow for [Kontilai's living] expenses" in large part because Kontilai had been taken into and remained in custody. Sp. App'x at 53–54 n.18. The district court likewise concluded that Kontilai had shown "no current need" for criminal defense funds, since he had "repeatedly indicate[d] that [an] insurance policy [was] currently covering" those costs. *Id.* at 53. Nevertheless, the district court expressly recognized that "an application may be appropriate in the future." *Id.* Even now, on appeal, Kontilai does not meaningfully assert or describe any non-speculative need for living expenses or criminal defense funds. *See, e.g.*, Kontilai Br. at 37 (requesting "access to funds needed to pay for any expenses . . . that are over and above the matters paid for by his insurance policy").

For all these reasons, we reject Kontilai's request to vacate the asset freeze order.

*　　*　　*

We have considered Kontilai's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court